## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| DIRECT SUPPLY, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 2:21-cv-01300 |
| PARK SUPPLY OF AMERICA, INC., | **JURY DEMAND** |
| Defendant. | |

## FIRST AMENDED COMPLAINT

Plaintiff Direct Supply, Inc. ("Direct Supply"), by its attorneys, Perkins Coie LLP, and as for its First Amended Complaint against Defendant Park Supply of America, Inc. ("Park or Defendant"), hereby alleges as follows:

## NATURE OF THE ACTION

1.  This is a civil action for trademark infringement, false designation of origin, and cyberpiracy under the Lanham Act, 15 U.S.C. §§ 1114 and 1125 *et seq.* ("Lanham Act"), and for trademark infringement and unfair competition under the laws of Wisconsin arising from Park's use of DIY DIRECT SUPPLY in a manner which infringes Direct Supply's prior rights in its DIRECT SUPPLY trademarks.  This is also an action for cancellation of U.S. Trademark Registration No. 6,180,249 for the mark DIY DIRECT SUPPLY & design pursuant to 15 U.S.C. §§ 1119 and 1052(d), because it comprises a mark which so resembles the DIRECT SUPPLY marks previously used by Direct Supply in the United States as to be likely, when used on or in connection with the services identified in the registration, to cause confusion, or to cause mistake or to deceive. This action also comprises a claim for Park's failure to register its assumed name, DIY Direct Supply, in violation of Minn. Stat. Ann. § 333.01, *et seq.*

## THE PARTIES

2.      Plaintiff Direct Supply, Inc. is a Wisconsin corporation with its principal place of business located at 6635 West Champions Way, Milwaukee, WI 53223.

3.      Defendant Park Supply of America, Inc. is a Minnesota corporation with its principal place of business located at 2727 East 26th Street, Minneapolis, MN 55406.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over Direct Supply's federal claims pursuant to 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121.

5.      This Court has supplemental jurisdiction over Direct Supply's claims arising under state law pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Direct Supply's federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

6.      This Court has personal jurisdiction over Park pursuant to Wisconsin's long-arm statute, WIS. STAT. § 801.05(1)(d), because upon information and belief, Park is engaged in substantial business activities within the State of Wisconsin. Specifically, Park solicits business from consumers located in Wisconsin, has existing customers in Wisconsin that use its products and/or services, and otherwise has sufficient contacts within the state of Wisconsin. Park operates an interactive website, and upon information and belief, Wisconsin residents have used that interactive website to conduct business with Park.

7.      Park, directly and/or through its agents, offers products and services through its website (*i.e.*, www.diydirectsupply.com) in the United States, the State of Wisconsin, and the Eastern District of Wisconsin.

- 2 -

8.      This Court's exercise of personal jurisdiction over Defendant is consistent with Wisconsin's long-arm statute, and traditional notions of fair play and substantial justice.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## FACTUAL BACKGROUND

### Direct Supply's Business and Longstanding Use of the Distinctive DIRECT SUPPLY Marks

10.     Direct Supply was founded by Bob Hillis in Milwaukee, Wisconsin in 1985 and is one of the country's largest distributors of equipment and supplies for long-term care and senior living facilities.

11.     Through its print catalogs and online store, Direct Supply markets and sells a broad array of products and services, including products and services relating to plumbing, HVAC equipment, hardware, electrical and lighting equipment, appliance parts, and janitorial supplies, all under the DIRECT SUPPLY (and related) trademarks.

12.     Direct Supply offers and provides its goods and services to customers across the nation and has sold hundreds of thousands of products through its online store at www.directsupply.com.

13.     Mr. Hillis remains Direct Supply's CEO and through his leadership, the company has emphasized the importance of community involvement, ensuring that Direct Supply is heavily involved in the Milwaukee community. Just last year, Direct Supply helped provide over ten thousand meals to neighborhood seniors, and donated hundreds of thousands of dollars to charitable organizations, with special attention to covid relief and social justice programs.

14.     Direct Supply also gives back on a national level. It has raised more than fifty million dollars for various organizations which advocate for senior healthcare funding.

- 3 -

15.     Since 1985, Direct Supply has used the DIRECT SUPPLY and trademarks in connection with its print catalogs distributed across the United States and subsequently, since at least as early as December 1998, with its online retail store, both of which feature, among other things, products and services relating to plumbing, HVAC equipment, hardware, electrical and lighting equipment, appliance parts, and janitorial supplies.

16.     As Direct Supply's business and brand have grown, it has also adopted and used additional DIRECT SUPPLY marks, including DIRECT SUPPLY EQUIPMENT & FURNISHINGS, beginning in 2009, in connection with its online retail store services.

17.     Direct Supply owns the following U.S. Trademark registrations and applications ("DIRECT SUPPLY Registered Marks") in connection with its online retail store and related goods and services:

| Mark | Reg. No. / Ser. No. | Reg. Date / App. Date | Goods & Services (in relevant part) / First Use in U.S. Commerce |
|---|---|---|---|
| **DIRECT SUPPLY** | 2,844,206 | May 25, 2004 | Mail order catalog and on-line retail store services featuring durable equipment and supplies for long term health care (Class 35) (Apr. 1, 1995) |
| **DIRECT SUPPLY EQUIPMENT & FURNISHINGS** | 4,078,536 | January 3, 2012 | Publications, namely, catalogs featuring furniture, food service equipment, HVAC, floor care, and housekeeping equipment, plumbing, laundry and durable equipment, long-term health care and medical furniture and equipment, patient monitoring and physical therapy equipment and accessories, audio-visual and recreational equipment, educational training |

- 4 -

| Mark | Reg. No. / Ser. No. | Reg. Date / App. Date | Goods & Services (in relevant part) / First Use in U.S. Commerce |
|---|---|---|---|
| | | | materials, and all related accessories; newsletters and brochures on a wide variety of topics in the fields of equipment, furnishings and supplies (Class 16) (December 7, 2009)<br><br>Mail order catalog and on-line retail store services featuring furniture, food service equipment, HVAC, floor care, and housekeeping equipment, plumbing, laundry and durable equipment, long-term health care and medical furniture and equipment, patient monitoring and physical therapy equipment and accessories, audio-visual and recreational equipment, educational training materials, and all related accessories, collection and compilation of equipment warranties into searchable databases; warranty management services in the nature of arranging for third-party repair and replacement of equipment pursuant to warranty agreements (Class 35) (December 7, 2009) |
| DIRECT SUPPLY | 4,024,088 | Sept. 6, 2011 | Electric lighting fixtures, electric plate heaters, lamps (Class 11) (Jan. 1, 2010) |
| DIRECT SUPPLY | 4,024,090 | Sept. 6, 2011 | Electric lighting fixtures, electric plate heaters, lamps (Class 11) (Jan. 1, 2010) |

| Mark | Reg. No. / Ser. No. | Reg. Date / App. Date | Goods & Services (in relevant part) / First Use in U.S. Commerce |
|---|---|---|---|
| **DIRECT SUPPLY** | 4,058,024 | Nov. 22, 2011 | Mail order catalog and on-line retail store services featuring furniture, food service equipment, HVAC, floor care, and housekeeping equipment, plumbing, laundry and durable equipment, long-term health care and medical furniture and equipment, patient monitoring and physical therapy equipment and accessories, audio-visual and recreational equipment, educational training materials, and all related accessories; transportation logistics services, namely, arranging the transportation of goods for others; freight logistics management; market research; customer and product inquiry services via telephone and electronic means by providing customers with merchandise and service information of third-party vendors, preparing reports for third-party vendors and customers related to transaction history for analysis of purchasing and sales, and advising customers on carrying out online third-party commercial transactions; vendor management services; business consultation with respect to advising others on selection and use of environmentally friendly products in the workplace and in eldercare |

| Mark | Reg. No. / Ser. No. | Reg. Date / App. Date | Goods & Services (in relevant part) / First Use in U.S. Commerce |
|---|---|---|---|
| | | | facilities; business consultation and management consultation in the field of loss prevention management; business consultation in the field of disaster preparedness management; business consulting services in the field of risk management as it relates to patient, resident and employee safety practices; providing business process outsourcing services for others; collection and compilation of equipment warranties into searchable databases; warranty management services in the nature of arranging for third-party repair and replacement of equipment pursuant to warranty agreements (Class 35) (July 1, 1985) |
| **DIRECT SUPPLY** | 4,058,025 | Nov. 22, 2011 | Mail order catalog and on-line retail store services featuring furniture, food service equipment, HVAC, floor care, and housekeeping equipment, plumbing, laundry and durable equipment, long-term health care and medical furniture and equipment, patient monitoring and physical therapy equipment and accessories, audio-visual and recreational equipment, educational training materials, and all related accessories; transportation logistics services, namely, arranging the transportation |

| Mark | Reg. No. / Ser. No. | Reg. Date / App. Date | Goods & Services (in relevant part) / First Use in U.S. Commerce |
|------|---------------------|----------------------|-----------------------------------------------------------------|
| | | | of goods for others; freight logistics management; market research; customer and product inquiry services via telephone and electronic means by providing customers with merchandise and service information of third-party vendors, preparing reports for third-party vendors and customers related to transaction history for analysis of purchasing and sales, and advising customers on carrying out online third-party commercial transactions; vendor management services; business consultation with respect to advising others on selection and use of environmentally friendly products in the workplace and in eldercare facilities; business consultation and management consultation in the field of loss prevention management; business consultation in the field of disaster preparedness management; business consulting services in the field of risk management as it relates to patient, resident and employee safety practices; providing business process outsourcing services for others; collection and compilation of equipment warranties into searchable databases; warranty management services in the |

| Mark | Reg. No. / Ser. No. | Reg. Date / App. Date | Goods & Services (in relevant part) / First Use in U.S. Commerce |
|------|---------------------|----------------------|------------------------------------------------------------------|
| | | | nature of arranging for third-party repair and replacement of equipment pursuant to warranty agreements (Class 35) (July 1, 1985) |
| **DIRECT SUPPLY** | 90,880,267 | Aug. 12, 2021 | Electric lighting fixtures, electric plate heaters, lamps (Class 11) (Jan. 1, 2010) |
|  | 90,880,280 | Aug. 12, 2021 | Electric lighting fixtures, electric plate heaters, lamps (Class 11) (Jan. 1, 2010) |

18.     Pursuant to Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b), Direct Supply's federal registration certificates for marks on the Principal Register are *prima facie* evidence of the validity of these marks as well as Direct Supply's ownership and exclusive right to use these marks in connection with the identified goods and services.

19.     Additionally, all of these registrations (other than U.S. Reg. Nos. 4,024,088 and 4,024,090) have achieved incontestable status under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

20.     Direct Supply owns a Wisconsin state trademark registration, Registration No. 20055600652, for DIRECT SUPPLY covering "Mail order catalog and on-line retail store services featuring durable equipment and supplies for long term health care" in International Class 35 with first use anywhere as of July 1985. This mark was registered on October 5, 2005.

21.     Direct Supply owns a Wisconsin state trademark registration, Registration No. 20055600637, for  covering "Mail order catalog and on-line retail store services featuring durable equipment and supplies for long term health care" in International Class 35 with first use anywhere as of July 1985. This mark was registered on October 5, 2005.

22.     Wisconsin state trademark Registration Nos. 20055600652 and 20055600637 are referred to collectively as the "DIRECT SUPPLY Wisconsin Registered Marks."

23.     Further, Direct Supply also owns common law rights for the following trademarks: (1) DIRECT SUPPLY; (2)  ; and (3) DIRECT SUPPLY EQUIPMENT AND FURNISHINGS, all in connection with print catalogs and an online retail store which features, among other things, products and services relating to plumbing, HVAC equipment, hardware, electrical and lighting equipment, appliance parts, and janitorial supplies among other things, (collectively referred to as the "DIRECT SUPPLY Common Law Marks").

24.     Through over 35 years of use across the United States and extensive consumer recognition, Direct Supply has substantial common law rights in the DIRECT SUPPLY Common Law Marks.

25.     The Direct Supply Registered Marks, Direct Supply Wisconsin Registered Marks, and Direct Supply Common Law Marks are collectively referred to as the "DIRECT SUPPLY Marks."

26.     Direct Supply consistently and prominently uses and displays the DIRECT SUPPLY Marks in connection with the advertising, promotion, and sale of its goods and services.

27.     Direct Supply has continuously used the DIRECT SUPPLY Marks to identify its goods and serves and to distinguish them from products and services offered by others. Direct Supply has accomplished this by using the DIRECT SUPPLY Marks in its advertising, catalogs, brochures, website, and other marketing materials.

28.     Owing to Direct Supply's promotional, advertising, and marketing efforts over these many years, the DIRECT SUPPLY Marks have become widely known throughout the United States, including in Wisconsin, as identifiers of Direct Supply's products and services.

- 10 -

29.     Direct supply has invested significant time, funds, and effort toward developing, marketing, and commercializing its DIRECT SUPPLY Marks and toward establishing these marks as source identifiers. As a result, Direct Supply has built strong goodwill in the DIRECT SUPPLY Marks.

30.     Moreover, through widespread industry acceptance and recognition, the consuming public and the trade have come to recognize the DIRECT SUPPLY Marks as identifying a single source of high-quality goods and services - namely, Direct Supply. In this sense, the DIRECT SUPPLY Marks have acquired distinctiveness, or "secondary meaning," in that customers have come to view the DIRECT SUPPLY Marks as source identifiers for Direct Supply.

31.     The DIRECT SUPPLY Marks are assets of incalculable value as a symbol of Direct Supply, its quality products and services, and its goodwill.

**Defendant and Its Infringing Marks**

32.     Park markets and sells plumbing, heating, hardware, electrical and lighting products, among other things, through its website at www.diydirectsupply.com.

33.     Park uses at least two marks—DIY DIRECT SUPPLY and —that prominently feature and wholly incorporate Direct Supply's DIRECT SUPPLY mark in connection with Park's marketing and sale of plumbing, heating, hardware, electrical, lighting, appliance, and other products.

34.     Park filed an application to register the DIY DIRECT SUPPLY & design mark , on May 7, 2020, U.S. Serial No. 88,905,007.

- 11 -

35.     The DIY DIRECT SUPPLY & design mark registered on October 20, 2020, U.S. Reg. No. 6,180,249, and covers "[o]nline retail store services featuring plumbing, HVAC, hardware, electrical, lighting, appliance parts and janitorial supplies" in International Class 35.

36.     Park also uses the word mark DIY DIRECT SUPPLY in connection with online retail sales of plumbing, HVAC, hardware, electrical, lighting, appliance parts and janitorial supplies, including in advertisements on Facebook and Instagram.

37.     The DIY DIRECT SUPPLY word mark and the  mark are referred to collectively as the "DIY DIRECT SUPPLY Marks."

38.     Like Direct Supply's DIRECT SUPPLY Marks, the DIY DIRECT SUPPLY Marks prominently feature the words "Direct" directly above the word "Supply," and the logo versions of these marks feature those terms in blue lettering, as depicted below.



39.     The DIY DIRECT SUPPLY Marks prominently feature and wholly incorporate Direct Supply's DIRECT SUPPLY Mark.

40.     Park provides online retail store services, along with plumbing, HVAC equipment, hardware, electrical and lighting equipment, appliance parts, and janitorial products using its DIY DIRECT SUPPLY Marks through its website at www.diydirectsupply.com.

41.     On information and belief, Park knew about Direct Supply and its DIRECT SUPPLY Marks when adopting the DIY DIRECT SUPPLY Marks in an effort to divert customers away from Direct Supply and to Park.

42.     Park's domain name www.diydirectsupply.com was registered years after Direct Supply first used its DIRECT SUPPLY Marks in commerce.

- 12 -

43. Park uses its DIY DIRECT SUPPLY Marks on social media, in online advertising campaigns, and in other marketing materials to advertise and promote its online retail store services and goods offered through its online retail store.

44. Additionally, Park uses the word mark DIY DIRECT SUPPLY without any design component in some of its social media sites, including on Facebook and Instagram.

45. For example, Park has posted the following advertisements on its DIY Direct Supply Instagram page:



* * *



NEED TO GET YOUR HOLIDAY SHOPPING DONE?

DIY DIRECT SUPPLY IS PROUD TO CARRY GENERAL WIRE

Shop all General Wire Spring Company products on our website.





diydirectsupply · Follow

diydirectsupply Meet our featured vendor of the month for November: General Wire Spring Company! DIY Direct Supply is proud to carry General Wire products. Shop our full selection of General Wire products on our website at the link in our bio!

Products featured in this post: General Wire Spring Deluxe Kinetic Water Ram Kit - 6" Runner Cone (top right), General Wire Spring Lemon Scented Snake bc Oil (center right), General Wire Spring Spin-Thru™ Manual Drain Cleaner - 25 ft, 1/4 in. Dia. Cable (bottom right).

#generalwire #generalwirespringco #diy #cleaning #toolkit #holidayshopping #linkinbio #diyprojects #diyhomerepair #diyplumbing

51w

3 likes

NOVEMBER 12, 2020

Add a comment...                                              Post

* * *



46.     Similarly, Park has posted the following images and advertisements on its Facebook page:



47.    On information and belief, Park and Direct Supply provide related, and in some instances, identical, online retail store services along with plumbing, HVAC equipment, hardware, electrical and lighting equipment, appliance parts, and janitorial products and compete for the same customers in overlapping geographic regions within Wisconsin and throughout the country, through the same channels of trade.

48.     Upon information and belief, Park has not registered its assumed name, DIY Direct Supply, with the Minnesota Secretary of State.

49.     Park is not authorized by Direct Supply to use the DIRECT SUPPLY Marks or any marks confusingly similar thereto, such as the DIY DIRECT SUPPLY Marks.

50.     Park's use of the DIY DIRECT SUPPLY Marks is likely to cause confusion, mistake, or deception as to the source or origin of Park's products and services in that customers and potential customers are likely to believe that Park's products and services are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Direct Supply, when they are not.

51.     In fact, Park's use of the DIY DIRECT SUPPLY Marks has caused actual confusion among Direct Supply's customers.

52.     On July 8, 2021, after Direct Supply became aware of Park's use of the DIY DIRECT SUPPLY Marks following an instance of actual customer confusion, Direct Supply sent a cease and desist letter to Park demanding that it cease use of the infringing DIY DIRECT SUPPLY Marks.

53.     On October 7, 2021, after Park failed to comply with Direct Supply's demands, Direct Supply sent a follow-up letter to Park, reiterating its demand that Park cease all use of the DIY DIRECT SUPPLY Mark in light of Direct Supply's longstanding use of the DIRECT SUPPLY Marks as well as its registration of such marks, the likelihood of confusion between the parties' marks, and the instance of actual consumer confusion that Direct Supply became aware of.

54.     To date, Park has continued its infringing activities.

## COUNT I
## Trademark Infringement
## (15 U.S.C. § 1114(1))

55. Direct Supply repeats and realleges the allegations in paragraphs 17-19, 25-33, 36-47, and 49-54 as if fully set forth herein.

56. Direct Supply uses and owns the DIRECT SUPPLY Registered Marks in connection with its online retail store services along with a broad array of goods and other services, including plumbing, HVAC equipment, hardware, electrical and lighting equipment, appliance parts, and janitorial products.

57. In connection with its promotion and sale of online retail store services along with plumbing, HVAC equipment, hardware, electrical and lighting equipment, and appliance parts, Park uses the DIY DIRECT SUPPLY Marks in interstate commerce. The DIY DIRECT SUPPLY Marks are highly similar to Direct Supply's DIRECT SUPPLY Registered Marks.

58. Park's use of the DIY DIRECT SUPPLY Marks is likely to cause confusion and mistake and to deceive consumers and others as to the origin, sponsorship, or affiliation of the parties' products and services. Consumers observing Park's products and services in the marketplace are likely to believe that those services are sponsored by, associated with, or otherwise affiliated with Direct Supply, when they are not.

59. Park's use of the DIY DIRECT SUPPLY Marks constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

60. Park's use of the DIY DIRECT SUPPLY Marks is a knowing, willful, and intentional violation of Direct Supply's rights.

61. Park's acts of trademark infringement, unless restrained, will cause great and irreparable harm to Direct Supply and to the business goodwill represented by the DIRECT

- 18 -

SUPPLY Registered Marks, in an amount that cannot be ascertained at this time, leaving Direct Supply with no adequate remedy at law.

62.     In addition, Direct Supply is being and will continue to be irreparably injured through the loss of control of its brand's reputation. Park's unauthorized use of the DIY DIRECT SUPPLY Marks causes Direct Supply to be associated with goods and services over which it has no control. That involuntary association will injure Direct Supply, especially if customers are dissatisfied with Park's goods or services for any reason and consequently have a less favorable opinion of Direct Supply.

63.     By reason of the foregoing, Direct Supply is entitled to injunctive relief against Park, restraining it from any further acts of trademark infringement, and is also entitled to recovery of Park's profits, actual damages, enhanced profits, and damages, costs, including treble damages, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

64.     On information and belief, Park's acts complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and in conscious disregard of Direct Supply's rights in the DIRECT SUPPLY Registered Marks, and with an intent to trade on Direct Supply's goodwill in these marks.

## COUNT II
### False Designation of Origin
### (15 U.S.C. § 1125(a))

65.     Direct Supply repeats and realleges the allegations in paragraphs 11-12, 15-16, 23-24, 25-33, 36-47, and 49-54 as if fully set forth herein.

66.     Through continuous use throughout the United States of one or more of the DIRECT SUPPLY Common Law Marks for over thirty-five years, Direct Supply owns rights in the DIRECT SUPPLY Common Law Marks in connection with online retail store services along

with plumbing, HVAC equipment, hardware, electrical and lighting equipment, appliance parts, and janitorial products and services, among other goods and services.

67. Through such longstanding and prominent use, Direct Supply's DIRECT SUPPLY Common Law Marks have acquired secondary meaning as a designation of source for Direct Supply's goods and services.

68. In connection with the promotion and sale of its online retail store services along with plumbing, heating, hardware, electrical, lighting, and appliance products, Park uses the DIY DIRECT SUPPLY Marks in interstate commerce.

69. Park's use of the DIY DIRECT SUPPLY Marks commenced well after Direct Supply began using its DIRECT SUPPLY Common Law Marks in connection with online retail store services along with a broad array of goods and other services, including plumbing, HVAC equipment, hardware, electrical and lighting equipment, appliance parts, and janitorial products.

70. Park's use of the DIY DIRECT SUPPLY Marks is likely to cause confusion and mistake and to deceive consumers as to the origin, sponsorship, or affiliation of the parties' services. Consumers seeing Park's products and services offered under the DIY DIRECT SUPPLY Marks are likely to believe those services are sponsored by, associated with, or otherwise affiliated with Direct Supply, when they are not.

71. Park's use of the DIY DIRECT SUPPLY Marks constitutes false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72. Park's use of the DIY DIRECT SUPPLY Marks is a knowing, willful, and intentional violation of Direct Supply's rights.

73. Park's acts of false designation of origin, unless restrained, will cause great and irreparable harm to Direct Supply and to the significant goodwill represented by Direct Supply's

DIRECT SUPPLY Common Law Marks, in an amount that cannot be ascertained at this time, leaving Direct Supply with no adequate remedy at law.

74.     By reason of the foregoing, Direct Supply is entitled to injunctive relief against Park, restraining it from any further acts of false designation of origin, and is also entitled to recover Park's profits, actual damages, enhanced profits and damages (including trebling), and reasonable attorneys' fees under 15 U.S.C. §§ 1116, 1117, and 1125.

<u>**COUNT III**</u>
**Violation of Anti-Cybersquatting Consumer Protection Act**
**(15 U.S.C. § 1125(d))**

75.     Direct Supply repeats and realleges the allegations in paragraphs 11-12, 25-32, 40-42, 47, and 49-54 as if fully set forth herein.

76.     Direct Supply has registered and owns the domain name www.directsupply.com.

77.     Direct Supply's DIRECT SUPPLY Marks have long been used in connection with Direct Supply's online retail store and the senior living, healthcare, plumbing, HVAC, hardware, electrical and lighting, appliance, and janitorial products and services and have acquired secondary meaning as a designation of origin for Direct Supply.

78.     Park's domain name www.diydirectsupply.com is confusingly similar to Direct Supply's domain name, www.directsupply.com, and the DIRECT SUPPLY Marks.

79.     Upon information and belief, Park knew of Direct Supply's rights in the DIRECT SUPPLY Marks for online retail store services and a broad array of goods and other services, including plumbing, HVAC equipment, hardware, electrical and lighting equipment, appliance parts, and janitorial products, when Park adopted the www.diydirectsupply.com domain name, wholly incorporating Direct Supply's DIRECT SUPPLY mark.

80.     Park continued to use the domain name even after receiving Direct Supply's July and October 2021 letters notifying it of Direct Supply's rights in the DIRECT SUPPLY Marks and stating that Park's use of the infringing marks had caused and would cause customer confusion.

81.     Park continues to use the infringing domain name by having it resolve to Park's website and continuing to divert online traffic away from Direct Supply.

82.     Park willfully intended and intends to divert customers to its website, generating revenue for Park.

83.     Park used and continues to use the domain name in bad faith with intent to profit from and use Direct Supply's DIRECT SUPPLY Marks.

84.     By reason of the foregoing, Direct Supply is entitled to injunctive relief against Park, restraining it from continued use of Direct Supply's DIRECT SUPPLY mark in its domain name. Direct Supply is entitled to transfer of the infringing domain name to Direct Supply and it is entitled to recovery of Park's profits, actual damages, enhanced profits, and damages (including trebling), costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1117, 1125.

## COUNT IV
## Trademark Infringement
### (Wis. Stat. § 132 et. seq.)

85.     Direct Supply repeats and realleges the allegations in paragraphs 11-12, 15, 20-22, 25-33, 36-47, and 49-54 as if fully set forth herein

86.     Park's DIY DIRECT SUPPLY Marks are substantially identical to the DIRECT SUPPLY Wisconsin Registered Marks.

87.     Indeed, the DIRECT SUPPLY Wisconsin Registered Marks are wholly encompassed in Park's DIY DIRECT SUPPLY Marks.

- 22 -

88.    Park's acts, practices, and conduct as alleged above constitute trademark infringement of the DIRECT SUPPLY Wisconsin Registered Marks in violation of Chapter 132 of the Wisconsin Statutes.

89.    Park's acts, practices, and conduct as alleged above have been willful and knowing.

90.    Park's acts, practices, and conduct as alleged above have caused, and are likely to continue to cause, injury and damage, including monetary loss, to Direct Supply.

91.    Direct Supply has no adequate remedy at law.

### COUNT V
### Common Law Trademark Infringement Under the Laws of Wisconsin

92.    Direct Supply repeats and realleges the allegations in paragraphs 11-12, 15-16, 23-33, 36-47, and 49-54 as if fully set forth herein.

93.    The DIRECT SUPPLY Common Law Marks have been in use for over thirty-five years. During that time, these marks have become known in the minds of consumers, throughout the United States and in Wisconsin, as a designation of source for Direct Supply and its print catalogs and online retail store featuring, among other things, products and services relating to plumbing, HVAC equipment, hardware, electrical and lighting equipment, appliance parts, and janitorial supplies.

94.    Through widespread industry acceptance and recognition, the consuming public and the trade have come to recognize the DIRECT SUPPLY Common Law Marks as identifying a single source of high-quality goods and services - namely, Direct Supply.

95.    Park's use of the DIY DIRECT SUPPLY Marks is likely to cause confusion, mistake, or deception as to the source of origin of Park's products and services in that customers and potential customers, including those in Wisconsin, are likely to believe that such products and

services are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Direct Supply when they are not.

96.     Park's acts constitute trademark infringement under the common law of Wisconsin.

97.     Park acted in willful, deliberate, and/or intentional disregard of Direct Supply's rights.

98.     Direct Supply has suffered irreparable harm, for which it has no adequate remedy at law, and will continue to suffer irreparable injury unless and until Park's infringing acts are enjoined by this Court.

## COUNT VI
### Common Law Unfair Competition Under the Laws of Wisconsin

99.     Direct Supply repeats and realleges the allegations in paragraphs 11-12, 15-16, 23-33, 36-47, and 49-54 as if fully set forth herein.

100.     Park's conduct constitutes unfair competition in violation of Direct Supply's rights.

101.     Park acted in willful, deliberate, and/or intentional disregard of Direct Supply's rights.

102.     As a direct and proximate result of Park's unfair competition, Direct Supply has suffered irreparable harm, for which it has no adequate remedy at law, and will continue to suffer irreparable harm unless and until Park's unfair competition is enjoined by this Court.

## COUNT VII
### Cancellation of U.S. Trademark Registration No. 6,180,249

103.     Direct Supply repeats and realleges the allegations in paragraphs 11-12, 15-19, 22-31, 34-35, 37-40, and 49-51, as if fully set forth herein.

104.     Direct Supply owns prior rights in its DIRECT SUPPLY Marks in connection with online retail store services along with a broad array of goods and other services, including

plumbing, HVAC equipment, hardware, electrical and lighting equipment, appliance parts, and janitorial products.

105.    The continued registration of Park's DIY DIRECT SUPPLY Mark in International Class 35 is likely to confuse consumers as to the origin, sponsorship, or affiliation of the parties' services, and therefore, Direct Supply is being harmed by the continued registration of U.S. Registration No. 6,180,249.

106.    U.S. Registration No. 6,180,249 must be cancelled as confusingly similar to Direct Supply's DIRECT SUPPLY Marks pursuant to 15 U.S.C. §§ 1119 and 1052(d).

<u>**COUNT VIII**</u>
**Failure to File Certificate of Assumed Name in Violation of**
**Minn. Stat. Ann. § 333.01 *et seq.***

107.    Direct Supply repeats and realleges the allegations in paragraphs 11-12, 25-33, 36-41, and 43-54 as if fully set forth herein.

108.    Park is a citizen of Minnesota and conducts business in Minnesota. As such, Park is required to comply with laws and regulations of the State of Minnesota, including Minn. Stat. Ann. § 333.01 *et seq.*

109.    Pursuant to Minn. Stat. Ann. § 333.01, Park is required to file a certificate with the Minnesota Secretary of State setting forth any assumed names or d/b/a.  The certificate is then required to be published after it has been filed with the Secretary of State in a qualified newspaper in the county in which Park has a principal or a registered office.

110.    Park's assumed name, or d/b/a, is DIY Direct Supply.

111.    Upon information and belief, Park has not registered its assumed name, DIY Direct Supply, with the Minnesota Secretary of State, in violation of Minn. Stat. Ann. § 333.01.

112.     Upon information and belief, Park's violation of Minn. Stat. Ann. § 333.01 has led, or is likely to lead, to consumer and industry confusion over which company does business under the DIY Direct Supply name. Upon information and belief, this confusion has caused, or may cause, Direct Supply to lose sales and has diluted Direct Supply's goodwill in its DIRECT SUPPLY Marks.

113.     Pursuant to Minn. Stat. Ann. § 333.065, Park is subject to penalties and remedies provided for in section 8.31, including damages to Direct Supply for violation of Minn. Stat. Ann. § 333.01 to Direct Supply's detriment, costs of suit, and attorneys' fees.

## **PRAYER FOR RELIEF**

Wherefore, Direct Supply prays that this Court:

A.     Enter a judgment that Park is liable to Direct Supply for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114;

B.     Enter a judgment that Park is liable to Direct Supply for false designation of origin pursuant to 15. U.S.C. § 1125(a);

C.     Enter a judgment that Park is liable to Direct Supply for cyberpiracy under the Lanham Act, 15 U.S.C. §§ 1114 and 1125;

D.     Enter a judgment that Park is liable for trademark infringement arising under Wis. Stat. § 132 and under Wisconsin common law;

E.     Enter a judgment that Park is liable for common law unfair competition arising under the laws of Wisconsin;

F.     Enter an order directing the United States Patent and Trademark Office to cancel U.S. Registration No. 6,180,249;

G. Enter a permanent injunction enjoining Park, its officers, agents, employees, assigns, and all persons acting in concert with it, from doing any act or thing likely to induce the mistaken belief that Park and/or Park's services and products are in any way affiliated with, connected with, or associated with Direct Supply or its products and services, or from doing any other act or thing likely to cause confusion with respect to Direct Supply and/or the DIRECT SUPPLY Marks;

H. Enter a judgment that Park's false designation of origin, common law unfair competition, and common law trademark infringement are and have been willful;

I. Order Park to provide an accounting to Direct Supply of all income derived from Park's sale of products and services under the DIY DIRECT SUPPLY Marks from the first sale to the present;

J. Order Park to pay Direct Supply any damages attributable to Park's trademark infringement, false designation of origin, cyberpiracy, common law trademark infringement, and common law unfair competition to account for all gains, profits, and advantages derived therefrom, all losses by Direct Supply, and such damages authorized by law;

K. Order Park to pay Direct Supply $10,000 pursuant to Wis. Stat. § 132.03;

L. Enter a judgment that Park is liable to for its violation of Minn. Stat. Ann. § 333.01 *et seq.*, and award such damages authorized by Minn. Stat. Ann. § 333.065 and Minn. Stat. Ann. § 8.31;

M. Enter an order declaring this an exceptional case;

N. Enter an order awarding Direct Supply attorneys' fees and costs, including pre-judgment and post-judgment interest, incurred in connection with this action; and

O. Award such other and further relief to which Direct Supply may be entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Direct Supply hereby demands a jury trial on all issues so triable.

Dated: January 24, 2022

Respectfully submitted,

DIRECT SUPPLY, INC.

*/s/* Michael R. Laing

Michael R. Laing (Wisc. Bar # 1097958)
PERKINS COIE LLP
33 East Main Street
Suite No. 201
Madison, Wisconsin 53703
Telephone:(608) 663-7460
Facsimile: (608) 663-7499
mlaing@perkinscoie.com

Douglas L. Sawyer (admission forthcoming)
Jeremy L. Buxbaum (admission forthcoming)
Kathryn A. Campbell (admission forthcoming)
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603-5559
Telephone:(312) 324-8400
dsawyer@perkinscoie.com
jbuxbaum@perkinscoie.com
kathryncampbell@perkinscoie.com

- 28 -

CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2022, I caused the foregoing First Amended Complaint to be served on all counsel of record via this Court's CM/ECF electronic noticing system.

/s/ Michael R. Laing